***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-14-0001160
20-SEP-2016
07:56 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

SCWC-14-0001160

CERTIFIED CONSTRUCTION, INC., Petitioner/Petitioner-Appellant,

v.

NANCY CRAWFORD, as Director of the Department of Finance, County
of Hawai'i, Respondent/Respondent-Appellee.
(CIVIL NO. 14-1-0303)

---

SCWC-14-0001190

In the matter of CERTIFIED CONSTRUCTION, INC.,
Petitioner/Petitioner-Appellant/Appellee,

v.

NANCY CRAWFORD, as Director of the Department of Finance, County
of Hawai'i, Respondent/Respondent-Appellee/Appellant.
(CIVIL NO. 14-1-0200)

---

SCWC-14-0001160 & SCWC-14-0001190

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001160 and CAAP-14-0001190;
CIVIL NOS. 14-1-0303 and 14-1-0200)

SEPTEMBER 20, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case arises from the disqualification of Certified Construction, Inc.'s (Certified or CCI) bid proposal on a public works project by the County of Hawai'i (County).[1] After Certified's bid was disqualified, Certified submitted a bid protest to the County. The Office of Administrative Hearings determined that Certified's protest was a challenge to the contents of the bid solicitation rather than to the disqualification of its bid proposal, and thus it concluded that Certified's protest was not timely and dismissed the case. On judicial review, the Circuit Court of the Third Circuit (circuit court) disagreed, finding that the Office of Administrative Hearings had jurisdiction to consider Certified's challenge, and the case was remanded for further proceedings. On remand, the merits of Certified's challenge to its disqualification were reviewed by a second hearings officer who determined that Certified failed to demonstrate entitlement to relief. The decision of the second hearings officer was subsequently affirmed on review by the circuit court. Following the circuit court's second order, Certified appealed to the Intermediate Court of Appeals (ICA) from the circuit court's second order,

---

[1] Nancy Crawford as Director of the Department of Finance of the County of Hawai'i is the respondent in this case.

2

and the County appealed to the ICA from the circuit court's first order. The ICA determined that Certified's protest was untimely, and thus the ICA concluded the Office of Administrative Hearings was without jurisdiction to consider Certified's protest.

We conclude that the ICA erred in determining that Certified's bid protest challenged the contents of the County's bid solicitation; instead, Certified's protest challenged the County's disqualification of its bid proposal. Accordingly, we vacate the ICA judgment on appeal and remand the case to the ICA to address the other issues presented by the parties in the consolidated appeal.

## I. BACKGROUND

On December 24, 2013, the County issued a Proposal and Specifications (Bid Solicitation) for "Reroofing for Fire Maintenance Shop and Fire Dispatch/Warehouse," Job No. B-4190 (Project). The Bid Solicitation solicited bids for the "new replacement roof, purlins, roof insulation, flashing, ventilators, gutters, downspouts, structural steel, painting and related work."[2] The first page of the Bid Solicitation provides that in order to be eligible to bid, a bidder must possess a

_____

[2]     Sealed bids were to be accepted until February 6, 2014.

3

General Contractor's License B, and, in boldface, it directs bidders to see the attached special notice to bidders:

> To be eligible to submit a bid, the Bidder must possess a valid State of Hawai'i, General Contractor's License "B". **See Special Notice to Bidders for additional licensing requirements.**

The "Special Notice" to bidders first provides a "reminder note," explaining that work must be performed by appropriately licensed entities and that a general contractor may not act as a specialty contractor in areas in which it has no license. The Special Notice identified specialty contractor classifications C-33, C-44, and C-48 as qualified to perform the work and meeting the minimum licensing requirements. Instructions preceded the listing of the specialty contractors and explained that although the listing provided the minimum requirements and no additional specialty contractor classifications were required, the Bidder may list additional subcontractors at its discretion.[3] Following the listing of the

---

[3] The Instructions explaining the listing of the specialty contractors stated the following in boldface:

> **Each of the following specialty contractor classifications listed in the table below have been determined by the County of Hawai'i as qualified to perform all of the work on this project based on the project's scope and the County's understanding of the State's licensing requirements and specialty contractor classifications' scopes of work. By way of the minimum licensing requirement stated for this project, no additional specialty contractor classifications are required to perform the work; however, the Bidder may list additional licensed subcontractors at its discretion.**

4

specialty contractors, there were "special instructions to bidders regarding specialty contractor classifications and regarding joint contractors and subcontractors."[4]  The Special

_____

[4]    The special instructions included the following:

SPECIAL INSTRUCTIONS TO BIDDERS REGARDING SPECIALTY CONTRACTOR CLASSIFICATIONS AND REGARDING JOINT CONTRACTORS & SUBCONTRACTORS:

. . . .

2) In the circumstance where a specialty contractor classification license listed in the above table may be deemed unnecessary by a Bidder due to its intent to employ a plausible alternative means or method, the Bidder shall in its Proposal clearly state such intent and provide a detailed plan that meets with the satisfaction of the Director.  The Director reserves the sole discretion and right to determine whether the Bidder's proposed justification for not listing the required license is acceptable.

3) In the circumstance where the Bidder is licensed in one or more specialty contractor classifications required of the project (whether automatically as a general engineering contractor "A", general building contractor "B", or outright) and it Intends to perform all or some of the work of those classifications using its own workforce, the Bidder shall, in its Proposal, list itself accordingly and in consideration of the balance of the instructions herein provided.

4) In the circumstance where a specialty contractor classification required in the above table may, in part or in whole (as applicable to the classification's scope of work), be within the licensed scope of work of another listed specialty contractor classification (e.g. overlapping scopes of licenses), the Bidder shall clearly delineate in its Proposal the extent of each subcontractor's responsibility on the project such that the Director can reasonably determine which classification is responsible for the corresponding scopes.  Where a listed specialty contractor classification is rendered completely unnecessary due to overlapping scopes of work, the Bidder, in its Proposal, shall clearly state such as the reason for not listing that respective entity in its Proposal.

Notice also stated the manner in which challenges to the Special Notice should be made and indicated that, if no objections were received, bidders would be presumed to be in agreement with the specifications of the Special Notice:

> Anyone who disagrees with the determination in the above table shall submit their written objection to the Director identifying the specialty contractor classification(s) in question and the justification(s) for such position at least 10 consecutive calendar days prior to bid opening. If no such written objections are received by the Director prior to such date, it will be presumed that all Bidders and affected parties are in agreement with the listing set forth above.

Thus, objections by bidders to the instructions in the Special Notice were required to be submitted at least ten days prior to bid opening.

On February 6, 2014, bids were opened and evaluated, and Certified submitted the lowest bid for the Project. By a letter dated February 14, 2014, from the Director of the Department of Public Works, the County notified Certified that its bid was disqualified pursuant to Section 2.2-6 of the General Requirement and Covenants of the Department of Public Works and Hawai'i Administrative Rules (HAR) § 3-122-33(d)(5). The disqualification letter stated that the Project required a C-44 license and that Certified's proposal failed "to list a C-44 – Sheet metal subcontractor or to describe an alternate means and methods by which the work required of this project covered by this license class would otherwise be legally executed."

6

Certified filed a protest with the County by a letter dated February 19, 2014. Certified's challenge was made pursuant to Hawai'i Revised Statutes (HRS) § 103D-71, and it protested the County's "disqualification of CCI and rejection of CCI's bid" for the Project. Certified's challenge asserted that the sheet metal work required for the Project could be performed under Certified's C-42 or C-44A licenses. Certified also argued that nothing in the Special Notice strictly required a C-44 license. Instead, Certified argued, the Special Notice stated only that the County believed C-44 contractors were qualified to perform certain work for the Project. Certified noted, "[T]hat the county believes a certain type of construction work can be performed under a particular license in no way means that the same work cannot be performed under another specialty contractor license." The County subsequently upheld the disqualification of Certified's bid as being nonresponsive to the Bid Solicitation because Certified "failed to properly propose the change in specialty licenses in its bid documents."

Certified filed a request for a hearing with the Office of Administrative Hearings, Department of Commerce and Consumer Affairs (OAH). Certified filed a motion for partial summary judgment, and the County filed a motion for summary judgment contending, among other things, that Certified's bid

was nonresponsive.  The County also filed a motion to dismiss Certified's request for a hearing, which was granted by the Hearings Officer.  In the "Hearings Officer's Findings of Fact, Conclusions of Law and Decision," the Hearings Officer concluded that "[t]aken as a whole" the Bid Solicitation required a C-44 license" even though the "[t]he Special Notice to Bidders did not specifically say that a C-44 specialty contractor license was required."  Accordingly, the Hearings Officer concluded that "it was incumbent upon [Certified] to file a written objection ten calendar days prior to bid opening" in order to challenge the requirement.  Because Certified did not file a protest until after the bid opening--when its bid was disqualified--the Hearings Officer concluded that Certified's protest was untimely and the OAH was without jurisdiction to consider the challenge.

Certified appealed the dismissal of its protest to the circuit court.  The circuit court held a hearing on Certified's appeal and issued its June 16, 2014 ruling (first order).[5]  The circuit court found that the Special Notice did not require a C-44 license for completion of the Project.  The circuit court also found that Certified's protest of the disqualification of its bid was based in part on its position that it could properly

_____
[5]     The Honorable Glenn S. Hara presided.

8

perform the Project using its C-42 and C-44A licenses instead of the C-44 license.  Accordingly, the circuit court determined that the Hearings Officer's conclusion that a C-44 specialty contractor license was required by the Solicitation was clearly erroneous and that Certified's bid protest was thus timely submitted.  Given that the circuit court concluded that the OAH had jurisdiction to review Certified's protest of the disqualification of its bid, the circuit court vacated the Hearings Officer's decision and remanded the matter for further proceedings.

On remand to the OAH, the merits of Certified's protest were considered, and the Hearings Officer ruled that Certified failed to demonstrate entitlement to relief. Certified appealed this decision to the circuit court.  The circuit court affirmed this determination (second order), and Certified then appealed from the second order to the ICA. Subsequently, the County separately appealed to the ICA from the circuit court's first order, which concluded that OAH had jurisdiction to consider the merits of Certified's challenge to the disqualification of its bid and remanded the case to the OAH for further proceedings.

The ICA consolidated both appeals under appeal number CAAP-14-0001160.  With regard to its appeal of the first order,

the County argued that the circuit court erred when it determined that Certified's protest was timely filed and that the OAH had jurisdiction to review the protest. The County's position was that the Hearings Officer correctly determined that Certified's protest was an attack on the contents of the Bid Solicitation. The County contended that Certified's argument that the Special Notice reflected the County's understanding of licensing requirements was a "direct[]" challenge of the contents of the Bid Solicitation.

Certified countered that it challenged only the County's disqualification of its Bid Solicitation rather than its contents, as the circuit court correctly determined. Certified maintained that an attack on the contents of a solicitation occurs when a bid solicitation expressly requires something and the protestor contends that the stated requirement is unlawful or otherwise invalid. Certified argued that it did not challenge the contents of the Bid Solicitation because in contending that the Bid Solicitation did not require the use of a C-44 licensee, it was not attacking the solicitation itself.

The ICA concluded that the OAH was without jurisdiction to consider Certified's protest as Certified's bid protest was untimely under HRS § 103D-701(a). The ICA noted that, regardless of whether or not the Bid Solicitation required

10

a C-44 licensed sheet metal contractor, the Bid Solicitation required bidders to explain in their proposals how they would accomplish the scope of work without such a specialty contractor. The ICA also noted that Certified's protest letter ignored Special Instruction #2, and the ICA observed that "throughout the course of this litigation [Certified] fails to address the Special Instructions and instead simply argues that the designation in the solicitation of a C-44 licensed sheet metal contractor was wrong or not required." Therefore, the ICA explained, Certified "seeks to revise the Bid Solicitation by completely omitting the requirements under Special Instruction #2." The ICA remanded the case to OAH for dismissal for lack of jurisdiction.

Associate Judge Daniel R. Foley dissented from the majority opinion. In his dissent, Judge Foley indicated that he would affirm the circuit court finding that Certified's protest was timely submitted. Judge Foley reasoned that Certified's protest letter challenged the rejection and disqualification of its bid as non-responsive; accordingly, he concluded that Certified's protest letter challenged the disqualification of its bid rather than the contents of the Bid Solicitation. The dissent then proceeded to consider and indicate how it would

11

have ruled upon the remainder of the issues on the consolidated appeal.[6]

## II. STANDARD OF REVIEW

The appellate standard of review of an administrative hearings officer's decision is set forth in HRS § 103D-710(e) (2012). S. Foods Grp., L.P. v. State, Dep't of Educ., 89 Hawai'i 443, 452, 974 P.2d 1033, 1042 (1999). HRS § 103D-710(e) provides the following:

> No later than thirty days from the filing of the application for judicial review, based upon review of the record the circuit court may affirm the decision of the hearings officer issued pursuant to section 103D-709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
>   (1) In violation of constitutional or statutory provisions;
>
>   (2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
>
>   (3) Made upon unlawful procedure;
>
>   (4) Affected by other error of law;
>
>   (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
>   (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion;
>
>   . . . .

---

[6]     This Opinion addresses only the timeliness of Certified's protest as the ICA majority did not address the other issues raised in the consolidated appeal.

12

HRS § 103D-710(e). "The existence of jurisdiction is a question of law that [this court] review[s] de novo under the right/wrong standard." Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawai'i 257, 272, 318 P.3d 97, 112 (2013) (alterations in original) (quoting Kepo'o v. Kane, 106 Hawai'i 270, 281, 103 P.3d 939, 950 (2005)).

### III. DISCUSSION

The dispositive question raised in Certified's application for writ of certiorari is whether the ICA erred in its determination that Certified's bid protest to the disqualification of its bid was timely made.

Under HRS § 103D-701(a) (2012), "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation.[7] The timeframe for submission of

---

[7] HRS § 103D-701(a) states as follows:

> Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation. Except as provided in sections 103D-303 and 103D-304, a protest shall be submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto; provided that a protest of an award or proposed award shall in any event be submitted in writing within five working days after the posting of award of the contract under section 103D-302 or

(continued. . .)

a protest is dependent on the particular grievance asserted.

Generally, a protest must be submitted "within five working days

after the aggrieved person knows or should have known of the

facts giving rise thereto."  HRS § 103D-701(a).  If the protest

is from an award decision, the statute specifically provides

that the protest must be submitted within five working days

after the posting of the award.  Id.  If a protest challenges

the content of a solicitation, the statute specifies that the

protest must be submitted before the date set for the receipt of

offers.  Id.  With regard to challenges to the content of the

solicitation, the statute indicates the chief procurement

officer would not have jurisdiction to review the protest if the

protest was not submitted prior to the date set for offers to be

made:  "[N]o protest based upon the content of the solicitation

shall be considered unless it is submitted in writing prior to

the date set for the receipt of offers."  Id.

In this case, Certified submitted its protest within

five days of the County's disqualification of its bid, which was

---

(. . .continued)

> 103D-303, if no request for debriefing has been made, as
> applicable; provided further that no protest based upon the
> content of the solicitation shall be considered unless it
> is submitted in writing prior to the date set for the
> receipt of offers.

14

after the date set for the receipt of offers.[8]  Thus, whether Certified's protest was timely under HRS § 103D-701(a) depends on whether its protest is considered a challenge to the disqualification of its bid or as a challenge to the contents of the Bid Solicitation.  In its protest letter, Certified stated that the purpose of its letter was to protest the County's "disqualification of CCI and rejection of CCI's bid." Certified's protest does not challenge or seek modification of the requirements of the Bid Solicitation; rather, it explains Certified's interpretation of the requirements of the Bid Solicitation and why it satisfied the Bid Solicitation.  Indeed, Certified maintained in its letter that the Special Notice stated only that the County "believes that C-44 contractors are qualified to perform certain work for the project based on the County's understanding of the State's licensing requirements." However, Certified argued, "[T]hat the county believes a certain type of construction work can be performed under a particular license in no way means that the same work cannot be performed under another specialty contractor license."  Thus, Certified's protest challenged the disqualification of its bid.

---

8       It is noted that the Special Notice specifically required protestations to the contents of the Special Notice to be made "at least 10 consecutive calendar days prior to bid opening."

Additionally, the terms of the Special Notice itself further support Certified's position that it challenged the disqualification of its bid rather than the contents of the Special Notice. The Special Notice states, if no written objections to the contents were received prior to the deadline of ten calendar days prior to bid opening, "it will be presumed that all Bidders and affected parties are in agreement with the listing set forth above." Thus, under the terms of the Special Notice, it should have been presumed that Certified was in agreement with the requirements of the Special Notice.

Although Certified may have had a different interpretation of the Bid Solicitation than the one taken by the Director of the Department of Public Works responsible for reviewing its bid, "[n]owhere in the letter [did Certified] seek revision of any solicitation term." <u>Bombardier Transp. (Holdings) USA Inc. v. Dir., Dep't of Budget & Fiscal Servs.</u>, 128 Hawai'i 413, 418, 289 P.3d 1049, 1054 (App. 2012) (holding that a challenge to the rejection of a bid proposal was a challenge to the rejection of the proposal rather than to the bid solicitation). Thus, Certified challenged the disqualification of its bid rather than the contents of the Bid Solicitation. Certified's protest to the disqualification of its bid was timely made as it was submitted within five working

16

days of the County's letter communicating the disqualification to Certified.  See HRS § 103D-701(a) ("[A] protest shall be submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto . . . .").

The ICA majority concluded that Certified's bid protest was "based upon the content of the Bid Solicitation because it necessarily challenges and seeks to omit material terms of the Bid Solicitation," including Special Instruction #2.  However, Certified did not seek to modify, erase, or dispute the appropriateness of Special Instruction #2; rather, it sought to challenge the disqualification of its bid based on what it perceived as an erroneous interpretation of Special Instruction #2 by the County.  Regardless of the actual meaning of Special Instruction #2 and Certified's compliance or noncompliance with that term, Certified did not seek a revision of any terms of the Bid Solicitation.  In other words, merely because a protest implicates an interpretation of the bid solicitation, it does not mean that it necessarily challenges the contents of the bid solicitation.  There is a significant distinction between the contention that the terms of a bid solicitation are invalid and the contention that the terms of

the solicitation are being misinterpreted and thus misapplied. This case clearly involves the latter situation.[9]

### IV. CONCLUSION

For the reasons discussed, Certified's protest to the disqualification of its bid was timely made, and the OAH had jurisdiction to consider the merits of Certified's protest.  The ICA's April 20, 2016 judgment on appeal is vacated, and the case is remanded to the ICA to address the other issues presented in the consolidated appeal.

Jeffre W. Juliano and
Kristi L. Arakaki
for petitioner

Lerisa L. Heroldt and
Laureen L. Martin
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

[9]    It is noted that this case is distinguishable from Ludwig Constr., Inc. v. Cty. of Haw., Dep't of Public Works, PCX-2009-6 (OAH December 21, 2009), which was discussed by the parties in their briefs.  In Ludwig, a bid was disqualified because it failed to list a C-37 license even though the County's solicitation required a C-37 license.  Ludwig, PCX-2009-6, at 5.  Following the disqualification of its bid, the bidder in Ludwig protested the disqualification of its bid, arguing that "[i]n the bid documents the county asked to use an improper license class on this project." Id. at 3 (alteration in original).  Thus, the protest letter in Ludwig challenged the contents of the bid solicitation for the project because it argued that the requirement itself was improper.